Argued and submitted October 17, 1988, reversed and remanded for reconsideration
May 24, 1989

In the Matter of the Compensation of
Conrad N. Delanoy, Claimant.

DELANOY,
*Petitioner,*

*v.*

WESTERN SHAKE COMPANY et al,
*Respondents.*

(WCB 86-11549; CA A47790)

773 P2d 818

David C. Force, Eugene, argued the cause and submitted the briefs for petitioner.

Darrel E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

NEWMAN, J.

Claimant seeks review of a Workers' Compensation Board order that affirmed without opinion the referee's order denying a claim for permanent total disability.[1] Claimant asserts that the order is contrary to law and "is not supported by substantial evidence in the record." Because the order is inadequate for review, we reverse and remand.

The referee recited these facts as "evidence." Claimant, now age 42, injured his right knee in 1963 at his first job, shoveling oysters. Dr. Manley, an orthopedist, fused the knee in 1977, that shortened claimant's right leg. Claimant has also had low back problems since January, 1975, and a flare-up of back problems in 1978 that Manley attributed to the shortened leg. He has worked in the woods, driven a gravel truck, operated heavy equipment and, from 1966 until 1976, worked in a shake mill of which he was part owner. He is barely able to read and write but has good arithmetic skills.

In 1978, claimant began to work in one of employer's shake mills as a sawyer. In July, 1979, he twisted his left knee at work and filed a compensation claim. Manley diagnosed medial collateral ligament strain and performed arthoscopic examinations on the knee in September, 1979, and in May, 1980. He diagnosed chondromalacia and synovitis. In March, 1981, claimant returned to work in another of employer's shake mills. His claim was reopened in December, 1981, for more knee surgery. Dr. Degge examined him for employer in July, 1982, and found that he was medically stationary with "mildly moderate" left knee loss of function and inability to do work requiring prolonged standing, bending, walking, stooping or climbing. A determination order closed the claim on August 13, 1982, with no further award of permanent disability.

In November, 1982, claimant's left knee worsened and Manley referred him to Dr. Rusch, another orthopedist, who performed a major ligament reconstruction on January 21, 1983. In October, 1983, claimant stepped in a hole and

---

[1] The referee increased claimant's scheduled disability award for the loss of function of his left leg and increased his unscheduled permanent disability award for a low back condition.

ruptured that reconstruction. On January 30, 1984, he underwent another major ligament reconstruction. On May 5, 1986, Orthopaedic Consultants examined him and concluded:

> "It is our recommendation that he can have a sedentary type job only, probably at home since he is unable to drive a car because of the right knee. Due to his inability to read or write his prognosis of returning to gainful employment is definitely guarded."

Manley agreed with the recommendation but stated that claimant is "permanently disabled." A determination order closed the claim on August 11, 1986, and awarded claimant an additional 10 percent for loss of use of the left leg and 35 percent for unscheduled permanent partial disability.

The referee described some of claimant's vocational rehabilitation efforts. Manley recommended vocational assistance in October, 1980. Vocational services were suspended in June, 1982, until claimant was declared medically stationary. In August, 1982, after claimant underwent surgery, Manley again recommended vocational assistance. He participated in a number of counseling sessions from 1980 until May 9, 1986. According to the referee, vocational services were terminated on May 9, 1986, "as a result of claimant indicating that he had no desire to participate in training nor return to work." The referee concluded:

> "The evidence does not preponderate in favor of finding that claimant is incapable of employment on a physical basis alone. Dr. Manley has expressed his opinion numerous times that claimant is 'permanently disabled.' However, he has also indicated that claimant is capable of sedentary work where he can arise as needed, and it is apparent that he is including claimant's non-physical conditions in his conclusion. The latest examination by Orthopaedic Consultants found claimant physically capable of sedentary work as well. Claimant must therefore prove that he is incapable of employment as a result of a combination of his physical disabilities and non-physical factors. In this regard, *the evidence is undisputed that he is currently unemployable.* Although transferrable skills were identified, they were not felt to be sufficient without retraining, including improvement of his literacy.

> "Therein lies the problem in this case. Claimant has considered himself to be permanently disabled even before he returned to work as a sawyer for ten months in 1981. Granted, his knee worsened thereafter requiring reconstruction, and it

is not disputed that he is no longer able to engage in that occupation, nor any other that he has previously performed. *He did finally participate in a vocational evaluation program, which found both physical and aptitudinal abilities to engage in sedentary work. However, claimant declined to participate further in vocational services. Although there is certainly no guarantee that participation therein would result in success in returning him to employment, his refusal to make the attempt has foreclosed the possibility.* As a result, claimant has failed to establish that he is willing to make reasonable efforts to attempt to return to the labor market, and is therefore not entitled to an award of permanent total disability." (Emphasis supplied.)

■■ The referee's findings that claimant is "currently unemployable" and that his skills "were not * * * sufficient without retraining"[2] are supported by substantial evidence in the record. He denied PTD, however, on the ground that claimant's refusal to participate in vocational services foreclosed the possibility of employment[3] and, therefore, that claimant has failed to show he was "willing to seek regular gainful employment and * * * ha[d] made reasonable efforts to obtain such employment." ORS 656.206(3).

■ In *Gettman v. SAIF,* 289 Or 609, 616 P2d 473 (1980), the court held that the Board cannot deny a PTD award "based upon a speculative future change in employment status" and that whether a claimant is permanently totally disabled "must be decided upon conditions existing at the time of the decision, and [the] award of compensation for [PTD] can be reduced only upon a specific finding that the claimant

---

[2] ORS 656.206(1)(a) provides:

" 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, *a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation.*" (Emphasis supplied.)

[3] We do not read the referee's statement that claimant refused to attempt to participate in vocational rehabilitation services and thereby "foreclosed the possibility" that he could return to employment to mean that the referee would deny PTD if he found that there was only a remote chance that claimant could be reemployed. A mere *possibility* that claimant might be reemployed at an unspecified time in the future is an insufficient basis on which to deny PTD. *See Welch v. Banister Pipeline,* 70 Or App 699, 702, 690 P2d 1080 (1984), *rev den* 298 Or 470 (1985).

presently is able to perform a gainful and suitable occupation." 289 Or at 614. *Gettman,* however, does not control the present case, because the court in that case declined to decide the effect on a PTD claim of "a claimant's unreasonable refusal to undertake or complete an offered course of vocational rehabilitation." 289 Or at 615 n 3. We interpret *Gettman* to mean that an unreasonable refusal to undertake or complete an offered course of vocational rehabilitation constitutes a failure to show that claimant was "willing to seek regular gainful employment and * * * ha[d] made reasonable efforts to obtain such employment."

The referee did not make the findings necessary to support his conclusion. He did not find who terminated claimant's vocational rehabilitation services or how or to whom claimant indicated "a desire to terminate services."[4] Moreover, although the referee recounted some of the vocational services offered to claimant, or in which he participated, he did not recount or resolve conflicts in the evidence of claimant's involvement. For example, he stated that, in January, 1986, claimant was evaluated at the Northwest Vocational Evaluation Center, after which Accra, a counselor, concluded that, although claimant did not have the skills to be employed immediately, there were several specific jobs that he could perform after on-the-job training and basic education. On the other hand, Dr. Fleming, a clinical psychologist who examined claimant on September 9, 1986, agreed with Accra's assessment of claimant's abilities and aptitudes but believed that claimant did not have the stamina and endurance to perform the described jobs. Fleming discussed at length Accra's job recommendations and why, in his opinion, claimant was disabled from performing them. The referee did not discuss, let alone weigh or resolve the conflict between Accra's and Fleming's conclusions. The referee did not find whether claimant was able to participate in on-the-job training in January, 1986, whether such training was available or whether it was offered to claimant and he unreasonably refused it.

---

[4] The referee's statement that claimant desired to terminate services apparently rests on a letter to claimant from the department that states that his right to receive vocational rehabilitation services is revoked under *former* OAR 436-120-090(7). Other subsections of that rule, however, require that a claimant receive a written warning that his eligibility for vocational assistance will end because he has failed to cooperate. The file contains none.

Reversed and remanded for reconsideration.